## Illinois Central Railroad Co., et al. v. Moss' Admr.

(Decided March 9, 1911.)

### Appeal from McCracken Circuit Court.

1. Railroads—Killing Person at a Crossing—Instruction in Action for Damages—Dangerous Crossing—Knowledge of Deceased.—In an action for damages against a railroad company by the administrator of one who was killed at a railroad crossing an instruction was given to the jury that it was the duty of the deceased in attempting to cross the track to use that degree of care that an ordinarily prudent and careful person would use in undertaking to cross over the track under like or similar circumstances, and that if the jury believed that the crossing was unusually dangerous and deceased knew it, then it was his duty to exercise such increased care to avoid injury to himself as was commensurate with the increased danger. Held, this instruction did not require the deceased to exercise increased care for his own safety, in going over the crossing unless he knew it to be unusually dangerous. It did not put upon him the burden of exercising care to discover this fact.

2. Negligence of Trainmen—Failure to Give Signals.—Where the negligence that resulted in the death of plaintiff's decedent was the failure of those in charge of the railroad train to give the proper signals or warning of its approach to the crossing, and if those in charge of the train failed to meet the requirements of the law and discharge their duty in this particular the company is answerable for such injuries as resulted.

3. Same—Character of Negligence.—Where a train that killed deceased at a railroad crossing was approaching the crossing under

the usual rate of speed at which freight trains travel, and according to the evidence of appellee failed to give the usual signals of its approach, this was not gross but ordinary negligence.

C. L. SIVLEY, TRABUE, DOOLAN & COX and WHEELER & HUGHES for appellants.

HERRICK & CRICE and HAL. S. CORBETT for appellee.

OPINION OF THE COURT BY JUDGE LASSING—Affirming.

On June 30, 1909, Bennett V. Moss, a man about seventy-six years of age, while attempting to cross the tracks of appellant company at Fortson crossing in McCracken county, was struck by a train and killed. His administrator sued to recover for his death. The appellant company denied liability and pleaded contributory negligence. Upon these issues, the case was submitted to a jury, which returned a verdict in favor of plaintiff for $2,500. The company appeals.

The public road and the railroad approaching the crossing run in practically the same direction, the road crossing the railroad at an angle of about thirty-five degrees. In approaching the crossing in the direction in which deceased was going, his back would be toward the train for some distance before reaching the crossing, and almost so when passing over the crossing. The railroad enters a cut west of this crossing a few hundred feet before reaching it, and the highway also enters a cut west of the crossing for quite a distance before reaching it. Where they cross each other the cuts come together, and at that point they are from five to seven feet deep. At the time the accident occurred there were several box cars standing upon a side track at that point, and these, together with orchard trees which were growing upon a strip of ground between the railroad and the public road approaching this crossing, tended to obscure the view, so that it would be difficult for one approaching this crossing as deceased was to see the train going in the same direction until he had almost entered upon the track. The testimony shows that a man in a buggy approaching the crossing could not see a train until within the right of way—his horse would be practically upon the track before he could get a view of the road. In other words, after he had come out upon the crossing he could see, and not until then. Those in charge of the train, and one other witness, who saw the accident, testify that de-

ceased drove upon the track at a time when the train was
so short a distance away that no amount of care upon the
part of those in charge of it, after they saw him upon the
track, could have prevented the injury. The mule which
was drawing the buggy crossed over the track. The
buggy was struck and deceased thrown therefrom and
killed.

The negligence relied upon to support a recovery is
that there were no signals of the train's approach to
this crosssing given. The company introduced a number
of witnesses, who testify positively that the proper sig-
nals were given, while appellee introduced as many or
more witnesses, who say that no signals whatever were
given. It is conceded that the crossing in question is,
because of its location, a peculiarly dangerous one. The
locality is thickly peopled and the road much traveled.
On this evidence the trial court refused to give a peremp-
tory instruction, but submitted the case to the jury. And
in this was undoubtedly correct.

Appellant's chief complaint is that the court erred
in defining the duties which deceased owed himself for
his own protection in approaching the crossing. That,
as this crossing is shown to be a dangerous one, deceased
should have been required to exercise a degree of care for
his own safety commensurate with that which the court
told the jury the appellant company was required to use
in approaching this crossing. Technically considered the
instruction is subject to this criticism. It is not as full
and explicit as it might have been. Still, we are of opin-
ion that in the form in which it was given it was not mis-
understood or misconstrued by the jury. For in it the
jury is told that it was the duty of deceased, in attempting
to cross the track, to use that degree of care that an
ordinarily prudent and careful person would use in
undertaking to cross over the track under like or similar
circumstances, and that if the jury further believed that
the crossing was unusually dangerous, and deceased
knew it, then it was his duty to exercise such increased
care to avoid injury to himself as ·was commensurate
with the increased danger, &c. This instruction did not
require of him to exercise increased care for his own
safety in going over this crossing unless he knew it to
be unusually dangerous. It did not put upon him the
burden of exercising ordinary care to discover this fact.
But if deceased lived in that community, as he doubtless

did, he must have been familiar with the crossing and its characteristics and dangers, and it was unnecessary for him to exercise ordinary or any care to know these facts. He already knew them; and it is altogether improbable that the jury would have drawn the nice distinction which counsel for appellant now makes. All of the evidence shows that it was an extremely dangerous crossing, on a much traveled road, in a populous community, and that the train was running on a down grade at a rate of speed variously estimated at from twenty to thirty miles an hour. The weight of the evidence is to the effect that no signals were being given of its approach to this crossing. The only safe means that deceased had to advise himself of the train's approach was withheld from him. He could not see the train because of the obstructions. It was down grade, and made little noise, comparatively speaking. If this testimony was true, the jury was warranted in finding the company guilty of negligence, unless they further believed from the evidence that, notwithstanding this negligence on the part of the company, deceased was himself negligent, and but for his negligence the accident would not have happened. The testimony shows that at the time he came upon the track the train was so close upon him that it was impossible for him to save himself by getting out of the way, or for those in charge of the train to avoid striking him. After they discovered his peril, no degree of care on their part could have prevented the accident. The negligence, if any, that resulted in his death, was in the failure of those in charge of the train to give the proper signals or warning of its approach to the crossing. Deceased had a right to expect these signals; and if those in charge of the train failed to meet the requirements of the law and discharge their duty to the traveling public in this particular, the company is answerable in damages for such injuries as resulted. We are of opinion that the instruction complained of, under the facts in evidence, fairly and substantially presented the issue to the jury, and that appellant was in nowise prejudiced by instruction number three in the form in which it was given.

The instruction on punitive damages was not authorized by the evidence. The sum and substance of all the evidence is that the train which struck deceased was approaching this crossing under the usual rate of speed at which freight trains travel, and, according to the evidence of appellee, failed to give the usual signals of its

approach. This is not gross, but ordinary negligence. If the failure to give signals is an evidence of gross negligence, then a punitive damage instruction would be authorized in every case where an accident occurred at a public or private crossing where signals were to be given. This court has not heretofore held that negligence of this character is such as would warrant or justify the court in giving an instruction permitting the jury to award punitive damages. But as the judgment is for only $2,500, we are constrained to believe that the jury disregarded the punitive damage instruction, or at least that it was not prejudicial, for we would be unwilling to say that for an injury due to negligence that resulted in death to one no older than deceased, $2,500 would be more than bare compensation. It is true, the deceased was about seventy-six years of age, but we cannot presume that, because of his age, his services to his family and estate were not valuable. If the verdict in this case were large, we would grant a reversal and direct a new trial because the court gave this instruction; but when the amount awarded seems to us to be no more than bare compensation, we do not feel justified in disregarding section 134 of the Code, which provides that:

"The court must, in every stage of an action, disregard any error or defect in the proceedings, which does not affect the substantial rights of the adverse party; and no judgment shall be reversed or affected by reason of such error or defect."

Upon the whole case we are of opinion that appellant had a fair trial and that substantial justice has been done.

The judgment is, therefore, affirmed.

The whole court sitting.

DISSENTING OPINION BY JUDGE NUNN.

I concur in the affirmance of this case, but dissent from the criticism of instruction number three, it was proper as was also the instruction authorizing punitive damages. Section 6 of the Kentucky Statutes says whenever the death of a person shall result from an injury inflicted by negligence or by wrongful act, then in every such case, damages may be recovered for such death; and when the act is willful or the negligence gross, punitive damages may be recovered. It is said in the opinion:

"All of the evidence shows that it was an extremely dangerous crossing, on a much traveled road, in a popu-

lous community, and that the train was running on a down grade at a rate of speed variously estimated at from twenty to thirty miles an hour. The weight of the evidence is to the effect that no signals were being given of its approach to this crossing. The only safe means that deceased had to advise himself of the train's approach was withheld from him. He could not see the train because of the obstructions. It was down grade, and made little noise, comparatively speaking. If this testimony was true, the jury was warranted in finding the company guilty of negligence.''

If this be true, it was certainly a case of gross negligence, it was an act of reckless disregard for human life. If a punitive damage instruction is not authorized by the facts above copied from the opinion, it is hard to conceive of facts which would justify such an instruction.